**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

BARRANCA BUILDERS, LLC,

                Plaintiff/Counterclaim-Defendant,

v.                                        Civ. No. 03-293  JP/RLP - ACE

LB/L-LOS SANTEROS PHASE I, LLC, a
Delaware Limited Liability Company, LB/L-
LOS SANTEROS MASTER LLC, a Delaware
Limited Liability Company, and LB/ LAKESIDE
CAPITAL PARTNERS LLC, a Delaware Limited
Liability Company,

                Defendants/Counterclaim-Plaintiff,

and

LB/L-LOS SANTEROS PHASE I, LLC

                Counterclaim-Plaintiff,

v.

DOYLESTOWN, LLC, a New Mexico
Limited Liability Company,

                Counterclaim-Defendant.

**MEMORANDUM OPINION AND ORDER**

On April 10, 2003 Counterclaim-Defendant Doylestown, LLC (Doylestown) filed a

Motion to Dismiss of Doylestown, LLC (Doc. No. 9), which argues that LB/L-Los Santeros

Phase I LLC's (Los Santeros) Counterclaim against it should be dismissed because Los Santeros

(1) failed to seek leave of the Court before joining Counterclaim-Defendant Doylestown as an

additional party in accordance with Fed. R. Civ. P. 13(h), (2) failed to satisfy the joinder

requirements of either Fed. R. Civ. P. 19 or 20 as required by Fed. R. Civ. P. 13(h), and (3) failed

to satisfy the necessary elements of diversity jurisdiction under 28 U.S.C. § 1332.  Having

reviewed the parties' arguments and the relevant law, the Court concludes that Doylestown's

motion should be denied.

### BACKGROUND

 The following facts are taken from the allegations asserted in Los Santeros's

Counterclaim against Barranca Builders, LLC (Barranca) and Doylestown.

Barranca and Doylestown are affiliated companies that are managed by the same

individual, William Kalinowski.  Barranca is a contracting company that constructs luxury homes.

Doylestown is a related financial entity that secures capital for Barranca's construction projects.

In 2000 Barranca began to build homes in Las Compañas, a private gated community near Santa

Fe, New Mexico.

To secure lots upon which to build its luxury homes, Barranca entered into numerous

contracts with Los Santeros, a company that owned lots in Las Compañas.  Under the terms of

those contracts, Los Santeros financed 50% of the purchase price for six vacant lots.  As

collateral for the extension of financing to Barranca, Doylestown delivered a separate promissory

note for each of the six lots.  The value of each note represented 50% of the purchase price of the

lot and collectively the principal amount of the notes totaled $1,475,000.  The promissory notes

required Doylestown to pay monthly interest until the home on a particular lot was sold.

However, under the terms of each note, at the end of 36 months, whether or not the home on a

given lot was sold, all principal and interest became due and payable.  Although Doylestown was

obligated to make the payments on the promissory notes, Barranca actually made the principal and interest payments.

Unfortunately for the parties, the decline in the national economy undermined the market for luxury homes. As a result neither Doylestown nor Barranca was able to meet the financial obligations outlined in the promissory notes to Los Santeros. Barranca approached Los Santeros to restructure Doylestown's indebtedness under the promissory notes. Barranca proposed that Los Santeros forgive all the outstanding debt on Doylestown's promissory notes, approximately, $1,180,000, and return to Barranca all of the interest and principal that had been paid. Since Los Santeros was also confronting financial difficulties it declined Barranca's proposal. However Los Santeros offered to forgive 50% of Doylestown's outstanding debt and to restructure the promissory notes so that everyone involved could avoid a financial loss. Barranca and Doylestown rejected Los Santeros's offer.

Meanwhile, in December of 2002 and January of 2003 Los Santeros entered into contracts to sell two homes on other lots on which Barranca had performed construction services. The sales price was $1,000,000 for one home and $1,165,000 for the second. On February 13, 2003, just before Los Santeros was about to close on the home sales, Barranca filed a civil suit in state court against Los Santeros, alleging that under the terms of the financing agreements Barranca had secured the right to purchase the lots upon which these two homes were built. According to Los Santeros, representatives from Barranca and Doylestown inappropriately informed the title companies that were to issue title insurance about the title dispute in an effort to thwart the sale of these two homes. In addition, Barranca filed a Notice of Lis Pendens on a total of 21 lots owned by Los Santeros in Las Compañas to place any potential purchaser on notice that Barranca

3

claimed the right of first refusal with regard to their sale.  Although the buyers for the two homes were ready, willing, and able to close on the transactions, the buyers terminated the sales because clear titles could not be conveyed under the circumstances.

Regarding the 21 lots to which Barranca claims a right of first refusal, Barranca's Notice of Lis Pendens effectively has prevented the sale of any of Los Santeros's property in Las Compañas.  Los Santeros alleges that it has suffered and continues to suffer economic damages as a result.  Los Santeros contends that Barranca's and Doylestown's actions were an unlawful attempt to coerce Los Santeros into eliminating Doylestown's debt under the promissory notes.

*ANALYSIS*

Counterclaim-Defendant Doylestown initially argues that under Fed. R. Civ. P. 13(h), Los Santeros should have sought leave of Court before joining Doylestown as a party to this action. Los Santeros contends that nothing in Rule 13(h) requires leave of the Court before joining Doylestown.  After considering the parties' arguments and carefully examining Rule 13, the Court concludes that a defendant does not have to seek leave of the Court before joining a party as long as the joinder satisfies Fed. R. Civ. P. 19 or 20.  *Northfield Ins. v. Bender Shipping & Repair, Co.*, 122 F.R.D. 30, 32-33 (S.D. Ala 1988).  In addition to the persuasive rationale of *Northfield*, the advisory committee notes to Rule 13(h) state that the rule was amended in 1966 because the former rule "had also been inadequate in failing to call attention to the fact that a party pleading a counterclaim or cross-claim may join additional persons when the conditions for a permissive joinder of parties under Rule 20 are satisfied."  This comment indicates that leave of Court is not required before joining a third party to the action.  *See also* Fed. R. Civ. P. 13(f) (requiring leave of Court to file a counterclaim only if a defendant failed to set up the claim in his initial pleading).

Under Rule 13(h), joinder of a third party is permitted "in accordance with the provisions of Rules 19 and 20." Doylestown argues that neither Rule 19 nor 20 is satisfied. The Court agrees with Doylestown that Los Santeros's Counterclaim is not a compulsory counterclaim under Rule 19. However, Doylestown has not attempted to show why Rule 20, which recognizes permissive joinders, does not apply here. Los Santeros's claims against Doylestown arise out of the same "series of transactions or occurrences" and share "questions of law or fact common to all these persons." Fed. R. Civ. P. 20 (outlining the standard for permissive joinder). Given the circumstances presented, judicial economy would be advanced by joining Doylestown in this action under Rule 20.

Doylestown contends, incorrectly, that Los Santeros's Counterclaim did not allege any wrongdoing by Doylestown. In fact, Los Santeros's Counterclaim alleges in Count V that Barranca and Doylestown entered into a civil conspiracy to commit unfair trade practices and to interfere with Los Santeros's contractual and prospective contractual relations. According to Los Santeros, Doylestown entered into the conspiracy to eliminate the debt it owed to Los Santeros. Hence, Doylestown is a proper Counterclaim-Defendant.

Doylestown also argues that it cannot be joined under Rule 20 because Los Santeros did not make the specific allegation that Doylestown was liable for at least $75,000, the amount in controversy necessary to support diversity jurisdiction. However, Los Santeros's Counterclaim alleges that the civil conspiracy, in which Doylestown allegedly participated, caused over $2,000,000 in lost revenues to Los Santeros. That allegation satisfies the amount in controversy requirement under 28 U.S.C. § 1332. *Ettenson v. Burke*, 2001-NMCA-003, ¶ 12, 130 N.M. 67, 17 P.3d 440 ("The purpose of a civil conspiracy claim is to impute liability to make members of

5

the conspiracy jointly and severally liable for the torts of any of its members.").  Hence

Doylestown's joinder is permissible since all the requirements for diversity jurisdiction are met.

IT IS THEREFORE ORDERED that Counterclaim-Defendant Doylestown's Motion to

Dismiss of Doylestown, LLC, Doc. No. 9, is DENIED.


_____
CHIEF UNITED STATES DISTRICT JUDGE